AUSA: Alexandra S. Messiter

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 321** |
| UNITED STATES OF AMERICA<br><br>                  v.<br><br>ADRIAN CARRILLO ROMO,<br><br>               Defendant. | **COMPLAINT**<br><br>Violations of 21 U.S.C. § 846; 18 U.S.C. § 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

       William Callahan, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Conspiracy to Distribute Narcotics)

       1.     From at least in or about December 2023 through at least in or about December 2024, in the Southern District of New York and elsewhere, ADRIAN CARRILLO ROMO, the defendant, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

       2.     It was a part and an object of the conspiracy that ADRIAN CARRILLO ROMO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

       3.     The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

       (Title 21, United States Code, Section 846; Title 18, United States Code, Section 2.)

       The bases for my knowledge of the foregoing charge are, in part, as follows:

       4.     I am a Special Agent with the DEA and have been personally involved in the investigation of this matter. This affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.      Based on my participation in this investigation, my communications with other law enforcement officers, and my examination of law enforcement reports and records, I have learned, among other things, the following, in substance and in part:

   a.      A confidential source of information ("CS-1")[1] informed law enforcement agents that, on or about December 12, 2023, a drug supplier ("CC-1") offered to sell CS-1 approximately 10,000 pills containing fentanyl (the "First Fentanyl Shipment") in exchange for approximately $30,000 in United States currency.  CS-1 provided CC-1 with an address in New York, New York for delivery of the First Fentanyl Shipment, and, subsequently, on or about December 15, 2023, CS-1 received the First Fentanyl Shipment at that address.  The pills in the First Fentanyl Shipment, which had a total weight of approximately 1,107 grams, were later tested and found to contain fentanyl.

   b.      On or about December 28, 2023, CC-1 provided CS-1 with contact information for an individual ("CC-2") who CC-1 identified, in sum and substance, as a narcotics distributor who worked with CC-1.  CC-1 further informed CS-1, in substance and in part, that the First Fentanyl Shipment had come from CC-2.[2]

   c.      Subsequently, CS-1 introduced CC-2 to another confidential source of information ("CS-2").[3]  Based on my communications with other law enforcement officers and my review of law enforcement reports and records, I have further learned that, from on or about December 28, 2023 up to and including on or about January 21, 2024, CC-2 and CS-2 communicated via phone calls and WhatsApp messages and, in the course of these communications, they discussed, among other things, the potential sale of fentanyl from CC-2 to CS-2.  In particular, on or about January 21, 2024, CC-2 and CS-2 discussed the sale of approximately 15 kilograms of fentanyl, which were to be delivered to CS-2 in New York, New York.

6.      Based on my participation in this investigation, my communications with other law enforcement officers, and my examination of law enforcement reports and records, I have further learned, among other things, the following:

---

[1] CS-1 is providing information to law enforcement for monetary compensation and in the hopes of receiving immigration benefits.  CS-1 was previously convicted of narcotics offenses in 2019.  Information previously provided by CS-1 has been credible and corroborated by independent evidence.

[2] Based on my review of law enforcement reports and records, I know that the mailing information on the package containing the Fentanyl Shipment indicated that the drugs had been mailed to CS-1 from the vicinity of California.  Based on a driver's license recovered from ADRIAN CARRILLO ROMO, the defendant, at the time of his arrest, I know that ROMO has a California driver's license, which bears a California address.

[3] CS-2 is providing information to law enforcement for monetary compensation.  CS-2 was previously convicted of gun possession and robbery offenses in 2013.  Information previously provided by CS-2 has been credible and corroborated by independent evidence.

a. CS-2 and CC-2 arranged for CS-2 to meet with a co-conspirator of CC-2, later identified as ADRIAN CARRILLO ROMO, the defendant, in the vicinity of Cleveland, Ohio to discuss potential sales of narcotics. On or about January 16, 2024, in an audio-recorded meeting, CS-2 met with ROMO in the vicinity of Cleveland, Ohio and discussed, among other things, potential sales of fentanyl to CS-2. Following this meeting, CS-2 provided ROMO with partial payment for the First Fentanyl Shipment in the amount of $5,000 in United States currency.

b. Following CS-2's meeting with ROMO on or about January 16, 2024, CS-2 and ROMO communicated via phone calls and text messages to discuss the sale of fentanyl to CS-2, which was to be delivered to CS-2 in New York, New York (the "Second Fentanyl Delivery"). On or about January 23, 2024, ROMO informed CS-2, in substance and in part, that ROMO would travel to New York in order to facilitate the delivery of the Second Fentanyl Delivery to CS-2.

c. Later on or about the same day, January 23, 2024, ROMO informed CS-2, in sum and substance, that he had arrived in New York. Subsequently, on or about the next day, January 24, 2024, ROMO met with CS-2 in person, during which meeting ROMO told CS-2, in substance and in part, that the Second Fentanyl Shipment was due to arrive in New York that night.[4]

d. Subsequently, on or about January 25, 2024 at approximately 2:30 a.m., law enforcement observed an individual ("Courier-1") arrive at the hotel ("Hotel-1") in Queens, New York where ROMO was staying, carrying, among other things, a suitcase (the "Suitcase"). ROMO met Courier-1 outside Hotel-1 and walked into the lobby of Hotel-1 with Courier-1. Law enforcement officers then stopped ROMO and Courier-1 and recovered the Suitcase.[5] The Suitcase contained approximately 12 to 13 kilograms of a substance that was subsequently field-tested and found to contain fentanyl.

---

[4] Based on my participation in this investigation, my communications with other law enforcement officers, and my communications with CS-2, I understand that CS-2 identified ROMO as the same person with whom he had met in the vicinity of Cleveland, Ohio on or about January 16, 2024.

[5] In statements made to law enforcement, both Courier-1 and ROMO, in sum and substance, disclaimed ownership of the Suitcase.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ADRIAN CARRILLO ROMO, the defendant, and that he be imprisoned or bailed, as the case may be.

/s authorized electronic signature

_____
William Callahan
Special Agent
DEA

Sworn to me by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Sworn to before me this 25th day of January, 2024.

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

4